All right, I'll call the next case, number 22-1381, United States v. Coleman, Ms. Phelps. Thank you, Your Honor. May it please the Court. My name is Jacqueline Phelps for Defendant Appellant Daryl Coleman. With the Court's permission, I'd like to reserve two minutes of time for rebuttal. Granted. Thank you. Daryl Coleman's superseding indictment refers to crack cocaine. Not once, not twice, not even five times, but no fewer than 12 times. To determine whether this is a First Step Act-eligible covered offense, this Court needs only to look at the plain language of the superseding indictment. There are four known facts that are not in dispute. First, the government concedes that the indictment describes a drug conspiracy that involved crack cocaine. Second, the government concedes that the jury was instructed that the conspiracy, and I quote, involved a Schedule II substance known as cocaine base or crack cocaine, end quote. Third, the government concedes that the sentencing court found Mr. Coleman was responsible for crack cocaine. And fourth, the government concedes that a dual-object drug conspiracy can be a covered offense under the First Step Act. Despite these concessions, the government has taken the position that Mr. Coleman's drug conspiracy exclusively involved powder cocaine. That is a complete about-face from when Mr. Coleman made that argument at his original sentencing. Mr. Coleman objected to the government's inclusion of crack cocaine. That objection was overruled. The sentencing judge specifically stated that Mr. Coleman was responsible for crack cocaine. Mr. Coleman argued on direct appeal that he should not have been held responsible for crack cocaine. This court stated, and I quote, that Coleman and Gibbs sold cocaine in both powder and crack form, and that Coleman and Gibbs processed cocaine into crack, end quote. The government cannot have it both ways. The government secured Mr. Coleman's conviction and his sentence by introducing evidence of crack cocaine charged in his indictment. How do we know that, though, because the charge was cocaine, just cocaine, right? That's correct. And it's a pre-Apprendi case, which complicates matters somewhat, you'd agree. Correct. We're reviewing for clear error, correct? Correct. And you're absolutely right. Everything you said is very compelling about how this record is pervasive with references to crack cocaine. But isn't it also true that the judge would have to take cognizance of that in determining what the relevant conduct was at sentencing? Sure, but— was for powder or for crack or for both. What we do know for sure is that the sentencing talked about crack at the very least as relevant conduct, but we don't know for sure whether that was the basis of the conviction. Correct. Do we? I'm sorry. Do we? I'm saying that, but am I wrong about that? So what Your Honor stated about the relevant conduct is exactly correct. But in this unique case, we don't just have the sentencing findings for relevant conduct. We have a jury instruction. The jury instruction necessarily implicated the crack cocaine statute. There is a general verdict. We don't know if they found that or not. They might have found him guilty on powder. Again, the jury might have found him guilty because of powder, because of crack, or because of both. We'll never know. Sure, but again, the jury instruction and the court's sentencing findings where it specifically stated, and I quote, I find you as a co-leader of the conspiracy were responsible for one and a half kilograms of crack cocaine. Those findings and that jury instruction implicated the crack cocaine statute. The crack cocaine statute, just like the powder cocaine statute, we're not disputing that, was implicated by the court's sentencing findings. What was he found guilty of violating, though? Wasn't he found guilty of violating 21 U.S.C. 841A? That is correct, Your Honor. All right. And what makes this case so hard is that under 841B12, that would have been a powder conviction. And under 841B1A3, it would have been a crack conviction. Correct. But again, we'll never know which of those the conviction was based on because the record doesn't tell us. All we know is that he was convicted of violating 841A and 846. Sure, and 841A and 846, as Your Honor knows and pointed out, it's just the general controlled substance statute. The penalty is separately listed out in 841B. Here, the record is silent as to what statute actually specifically formed the basis for Mr. Coleman's sentence. Right, and since the record's silent and the judge, and I believe it was the same judge that presided over the trial. That's correct, Your Honor. So he makes a finding that it was just powder, and how could that be clear error? What in the record tells us, even if you have on balance the better of the argument, let's say that we concluded that it's reasonable to believe that the numerous references in the record to crack cocaine tell us that on balance the better decision was that your client is eligible under the First Step Act. Even if we concede all that, how can we say it's clear error, particularly when this is the same judge that presided over the trial? Sure, Your Honor. The problem is, and the problem with the judge's statement that Mr. Coleman was sentenced only for powder cocaine is precisely what Your Honor stated. That's not in the record. So essentially what has happened here is the judge has gone back and effectively amended the record. And the judge in this position, in these proceedings, 25 years later, cannot go back and amend the record. That would be akin to, for example, if this court were to remand this case and say, Judge Bartle, can you just tell us what you meant? What statute did you mean 25 years ago? That's not the proper procedure. We have to look at the facts in the record as they are. And these facts, as they are before us now, show what we're calling a dual-object drug conspiracy that involved both powder cocaine and crack cocaine. Therefore, Mr. Coleman was necessarily sentenced for both powder and crack cocaine. Only if that's what he was convicted of. And we don't know. He might have been convicted just of powder. And the reason that's a distinct possibility is because there was a lot of cocaine, 150 kilos. That puts him at a 38. Correct. So I think you'd have a clear winner here if his final guidelines range, if they pegged his total offense level at 38 and the powder only got you to 25, then you'd know that they had to stack the crack on top of the powder. But that's not this case. Right. And so that actually brings us to the other problem with the district court's order. So what the district court said was this was not a case where the crack and powder was combined. We disagree with that. The sentencing transcript says there was. But that's the problem. The district court said that Mr. Coleman's offense level would have remained the same, 38. But that's the wrong analysis. That conflates eligibility with deserving relief. That's exactly right, Your Honor. And so the district court never once addressed whether or not Mr. Coleman's statutory penalties changed. As this court held in Jackson, a defendant can be first step eligible if their guidelines don't change. So what the court should have done and did not do is look to see whether Mr. Coleman's statutory penalties changed. The district court discusses Mr. Coleman's base offense level. The district court discusses Mr. Coleman's guidelines. But the district court never once addressed whether or not the statutory penalty changed. Yeah. Let's say we agree with all that. We can affirm for any reason supported by the record. How can we say it was clear error to say that he's not eligible under the First Step Act because the sentence was a powder sentence rather than a crack sentence? Sure. It was clear error because the district court made an entirely new factual finding that is not supported by the record. By stating that Mr. Coleman was sentenced only for powder cocaine, that is an entirely new factual finding that is both substantively and procedurally unreasonable. Why? Why isn't it? Why isn't it a juridical fact rather than a new fact finding? Isn't he wasn't his task to unearth what had happened before? And he said that he himself previously sentenced your client because of powder, not because of crack. Your Honor, that that is the new factual finding. Again, to quote the sentencing transcript, the district court stated, I find you were responsible for one and a half kilograms of crack cocaine. But then the court goes on to state, I further find you were responsible for one hundred and fifty kilograms of powder cocaine. And then the court goes on to state converting those numbers into marijuana equivalent, et cetera, et cetera. Your base offense level is thirty eight. We also know from from not only this court, but the Supreme Court's jurisprudence in conspiracy cases. And we've cited these in our brief that once the district court found any amount of crack cocaine, it had to convert those numbers into the marijuana. Again, that could have been because of relevant conduct. And again, that but once again, too. So there's two errors that the district court has made independently. Both independently require reversal and remand. Number one, the new factual finding, because the sentencing transcript, without doubt, unequivocal. What's the new factual finding? And I'm not I'm not sure I tuned into that. I'm sorry, your honor, that the district court stated that this was not a case in which the amounts were combined and the powder cocaine was the only thing that drove Mr. Coleman's sentence. Yes. So why is I'm not sure why that's a new factual finding. Why isn't that just him describing what he did 20 years ago? Because your honor, there's nothing new about it. Again, though, we have a sentencing transcript that clearly states that Mr. Coleman was sentenced for crack cocaine. We have jury instruction where the jury was instructed. But again, I'm sorry to keep keep hitting you with this, though, the relevant conduct issue. When you say he was sentenced for crack cocaine, wouldn't you agree with me that defendants are sentenced in part because of relevant conduct, not just the crime of conviction? Yes, your honor. And isn't it true that the First Step Act only opens the door to eligibility for a new look based upon the crime of conviction, not because of relevant conduct? That's exactly correct. All right. So what I'm struggling with here is I don't know whether the crack was was the conviction or relevant conduct. I can't figure it out. The record doesn't tell me. I don't think I'll ever know. But the judge who presided over the case said it was just powder. So if if everything I just said is accurate, how can this court conclude that all that adds up to clear error? Your honor, the again, the district court's factual findings, we know those are reviewed for clear error. It was a factual finding in this post-conviction proceeding in this First Step Act proceeding that Mr. Coleman was sentenced only for powder cocaine. That or even even talking relevant conduct, that statement alone is is contrary to the facts and it's contrary to the record. The fact is, is that until Mr. Coleman filed First Step Act relief, neither the district court nor the government had ever stated that Mr. Coleman was sentenced only for powder cocaine. Why would they have any reason to say anything? Well, your honor, part of it we can look at. We didn't cite these in our brief. But if we go back and we look at Mr. Coleman's motions that he filed under the retroactive guideline amendments, the crack cocaine amendments, we did cite where his co-conspirators received relief under crack cocaine guideline amendments. But so if we look at those proceedings that the district court again states, although you were responsible for crack cocaine, it doesn't change the overall guideline. So that's why the district court would bring that up in these posts in other proceedings. You're asking us to infer clear error because of the district court's misstep in conflating eligibility with entitlement to relief. Your honor, I see my time has expired. May I answer? So what happened here is that the district court's clearly erroneous finding informed its decision to deny Mr. Coleman relief. So the clear error, the clearly erroneous finding, that's where the interplay between the abuse of discretion happened. Also, we have independently of either of those things. We have that the district court at the end of the day, at the bottom line, did not use the correct eligibility test. The district court never addressed whether or not Mr. Coleman's statutory penalties changed with the First Step Act commands that we must do. So we would ask that this court remand to the district court with instructions for the district court to determine whether or not Mr. Coleman's statutory penalties changed based on the facts in the record. Thank you. If there are no questions, I'll reserve the remainder of my time. I can ask one question, Ms. Phelps. How do you reconcile this question? How do you reconcile your argument with the judgment itself, stating the court adopted the factual findings and guidelines, guideline application of the pre-sentence report at JA-7, and two, the PSR relying only on 150 kilograms of cocaine to determine Coleman's base level offense? Your Honor, if I may answer in two parts. First, all of those things that you mentioned and the government has cited, none of those things has anything to do with whether or not the statute changed. The PSR and what probation did or did not do and the guideline range respectfully have nothing to do with Mr. Coleman's statutory penalty. Let me stop you there. Don't you look at his conduct? You look at his conduct, not the statute under Terry, under the new, under not the Terry v. Ohio, but under the Terry case. Terry v. United States, no, Your Honor. What the Supreme Court held in Terry was that, essentially what this court held in Jackson, that we don't look at the conduct. The Supreme Court held that the First Step Act modified the statutory penalties for 841B crack offenses. But the problem is, to Judge Fisher's point, the problem is the judgment didn't advert to crack. If it adverted to crack, you win. It adverted to powder and only powder. So how could the district judge have been wrong in saying that the statutory penalty was all about powder, especially in a pre-apprendi case where the statutory penalty was only defined based upon the quantity found by the judge rather than the jury? Right, and that is the problem with this case, is that we have a pre-apprendi indictment, we have a pre-apprendi defendant. The government was not required to show, wasn't required to submit all of those facts to the jury. So it's our position that the word cocaine is an umbrella term that basically encompassed cocaine in any form. And we also know this, because what is very, very, very clear on this, and we've cited in our brief, is this court's decision in United States v. Gibbs, which is the direct appeal of Mr. Coleman's co-defendants. Mr. Coleman's appeal itself was affirmed without comment, but Gibbs is very instructive, because the three defendants that were consolidated in U.S. v. Gibbs, all three argued essentially what the government's arguing now, that the indictment said cocaine, the judgment said cocaine, this was cocaine, we should not have been held responsible for crack cocaine. I mean, that was a huge part of these defendants, as it would have been in a pre-Booker era with the 101 ratio. This court stated that the substance at issue was crack cocaine. This court held that, that the crack cocaine sentence findings, the crack cocaine sentencings themselves were not erroneous, because the government introduced evidence of crack cocaine, the jury was instructed that crack cocaine was involved in the conspiracy. So again, we would ask that this court remand to the district court to allow the district court to use the correct eligibility analysis of whether Mr. Coleman's statutory penalty changed based on the facts in the record, without amending the record, as they are today. Thank you, Ms. Phelps. We'll hear you on rebuttal. Mr. Zosmer? Thank you, Your Honor. May it please the court, Robert Zosmer for the government. Your Honor, I want to try if I can focus the argument. All this talk about sentencing and relevant conduct is not the issue before the court. Under this court's decision in Jackson, the issue before the court is what was the statutory charge.  And it's somewhat, you know, it's a pleasure again to appear here in person. And it's a bit ironic, Judge Hardiman, that I think the last time I had the honor to personally appear before you was the Jackson argument, which was on March 4th of 2020. I looked it up a week before the world closed. I am pleased that, Your Honor, Judge Hardiman, you agreed with our view in Jackson, but you were in dissent. Apparently, I was told by a smart law clerk that there aren't many other judges in the country that agreed with that. So I'm beginning to question the wisdom of that dissent. I don't know what that says, but there were a couple other appellate judges in the country who agreed with you. But the large majority did not. And thus, we are here to apply the majority decision in Jackson. And what the majority decision in Jackson, the money line, is that Congress intended eligibility to turn on a defendant's statute of conviction rather than his conduct. And so that's why sentencing is not what we're talking about today. Of course, it's sentencing. You bring up relevant conduct. If this relevant conduct had involved marijuana or heroin or whatever, that would have been added in, too. The question is, what was he charged with? Jackson produces. Thank you, Mr. Zosmer, because I made a mistake. I may have misstated the Terry question in my question to counsel. But didn't Terry further define what we need to look at? Do we need to look at the actual offense, not the statute? No, I think Terry confirms. I agree with my esteemed colleague. I think Terry confirms that we look at the statute. But didn't it say that you should look, the focus should be on the defendant's offense, not the more general statute or statutory scheme? Well, correct. And so the offense in this world of drug sentencing, the offense is defined by these threshold quantities. And so in Terry, there's no quantity charged in the indictment. And so the Supreme Court says, regardless of what your actual quantity was, you've been charged with no quantity. Therefore, you've been charged under B1C. The Fair Sentencing Act did not change B1C. It's still zero to 20. Therefore, you're not eligible. Jackson is consistent with that. Jackson, what the majority holds, is that if the offense you were charged with is where 50 grams of crack was the threshold, that's the statutory crime. And therefore, since 50 grams has changed, that used to be in A, now it's in B, you're eligible. The statutory penalty has changed. Now apply all that to this case. Right. So the interesting thing, if I could just make one more background comment, Your Honor. The interesting thing, of course, is that we've seen in hundreds of cases exactly what Judge Hardiman and you predicted and what we argued in Jackson, which is you get these very strange results. Somebody was charged with 50 grams and therefore they're eligible because that's now B, even though in the indictment at sentencing, we showed that it was 100 kilograms. And we argued then, and I think it's still true now, that that person gets a windfall because if they were sentenced now under the, it was more than 280 grams, a new threshold, they'd get the exact same sentence. And it's unfair to the people sentenced since 2010 who had 100 kilos and are not being given this golden opportunity to come back for resentencing. So we have hundreds and hundreds, maybe thousands of people around the country who benefited from this interpretation of the statute. Not faulting the courts, of course. Congress wrote this odd language and this is what we were left with. Mr. Coleman is one person who does not benefit from that strangeness because he didn't have the benefit of, as it turns out, of having the government charge in his indictment 50 grams of crack or five grams of crack. Well, that's because it's a historical anachronism, right? I mean, it didn't charge any substance. It just said cocaine, no quantity. So it just said cocaine. Is it your argument that in those old days where you could just say cocaine without quantity, that those folks convicted under that regime are never eligible for First Step Act? They're never eligible for First Step Act reconsideration? I think what we have to do is we have to look at the indictment and because that's all Jackson permits us. We look at anything more than the indictment? Perhaps the jury instructions because that can give clarity to the indictment, but that's it. Do we look at all the indictment? Yes, and there are cases in which you see, and we've conceded looking at the indictment, this was a crack cocaine case. It's all that's alleged. I can tell you, Your Honors, and I'm not just citing my experience. We can dive into the records of the district court to establish this. This case was charged as a cocaine case. I, for better or worse, have been at this since 1990. I know what the charging practices in my office and in this circuit have been since then. There's a reason this was charged as a cocaine case. This is not because at that time, even before Apprendi, before Booker, before anything else, if a case involved crack cocaine, you can look at our indictments. It says crack cocaine, and we also charged the thresholds as well in many cases before Apprendi because it was just the practice. All right, but even accepting all that, that can't be our grounds for decision. Well, the thing about this case involving Gibbs and Coleman and these gentlemen is that this was not a street corner case. This was not a case in which they're bagging it up and selling individuals we have in so many cases. They were moving serious quantities of cocaine on a day-in, day-out basis. They were buying dozens of kilograms at a time, and they were reselling to people who wanted cuts of that. That was the main conduct, and that's the reason it was charged that way. Now, yes, at the same time, they did convert some of this cocaine into crack. That's in the overt acts in the indictment. That is what leads to the relevant conduct. The truth is the crack does not drive this sentence at all. All right, fine. If we agree with you it doesn't drive it, if it's a part of the sentence, why isn't he eligible under the First Step Act? And don't you agree that the judge's opinion really conflated eligibility with the merits decision as to whether to grant relief? I agree that the judge's decision is not perfectly clear, and I wouldn't— Because he—as I read the opinion, correct me if I'm wrong, but I read the opinion to say almost a harmless error. He didn't use that phrase, but the opinion as written says, look, you're at a 38 for the powder, you're at a 38 for the crack. It doesn't change the sentence at all, and because it's not going to change anything, you're not eligible. And my critique of that analysis is it's conflating the two. Just because the judge shouldn't award relief doesn't mean you're not eligible, and I thought eligibility was all about crack. And if this is a, quote, crack case, even partially a crack case, then why isn't he eligible under the First Step Act? Well, I think the decision can be read that way, and I would not quarrel with my friend's suggestion that it be remanded if the court thinks that's necessary. Because the court's saying a couple things. It's saying it's a cocaine case, which would be decisive, but then it's also saying, well, you would get the same sentence for cocaine that you got for crack. I admit, that's our pre-Jackson argument. That's what we would argue before in a sort of harmless error argument. I agree. If that's the exclusive basis of the district court's decision, it should go back, and the court should be focused on what Jackson says we have to focus on. What was the statutory charge? And if I may explain that, the statutory charge here over and over and over again refers to cocaine, again, because that was what this case was predominantly about. The indictment, page 23 of the appendix, says the defendants did conspire to distribute a substance containing a detectable amount of cocaine. If we turn to the jury instructions, the judge told the jury that repeatedly. Page 84, count one of the superseding indictment, charges that they conspired to distribute cocaine. Page 98, I'll now instruct you on the offense underlying the conspiracy, charging count one. Count one charges the defendant with conspiracy to distribute a controlled substance, namely cocaine. Then it gets into the elements. One, the defendant has to have possessed a controlled substance described in this superseding indictment. Two, the defendant knew this substance was cocaine. The judge is plainly reading the plain language of the indictment. What the defense here is hung on is that there's one anomalous statement in the jury instructions, and that's on page 98. I'm sorry, page 88, where the judge adds the offenses charged in the superseding indictment involve a schedule two narcotic controlled substance known as cocaine base or crack. You are instructed as a matter of law that this substance is a controlled substance. And I say it's anomalous because it's not defining the elements for the jury. It's not asking the jury to find anything. It's not reading the indictment. It seems to just sort of be a misstatement at the moment where the judge refers to cocaine base instead of instead of cocaine. He does later refer to cocaine and say that's a controlled sub. He says I'm both. Cocaine is a controlled substance. Cracks are controlled substance. He does. But so if you need to look at the jury instructions, I think it confirms what we say. But I still believe that it's the indictment in this case that is very clear that charges a cocaine conspiracy. When I asked you, do we look at all the indictment? I mean, all of it. Why not? So why should we ignore the dozen references to crack in the indictment? And again, because it's for the same reason after Jackson that we have to ignore all the references in an indictment to the true quantity and to all the other acts. And in Burt, the defendant there was charged with violating 841 a one. Same as here. And we looked in that case to the plea agreement and the presentence report to sort of figure out the rest. Why couldn't we look beyond the indictment to other parts of the record here? I believe I wouldn't object to looking at any part of the record, but only for the purpose of defining what was the statutory charge. I wouldn't mind if the decision in Jackson had been different. If Judge Hardiman had been, you know, had prevailed. But this is where we are. And I'm not here to defend, you know, a life sentence just because this gentleman got a life sentence. It's a draconian sentence. But things have not worked out yet to provide him the opportunity to have that reduced. As we explain in our brief, I think the main problem for Mr. Coleman is not this. If he obviously committed this crime today, he'd be subject to the same guidelines. I mean, there's massive amounts of drugs and his leadership role and the violence that was involved. The main problem for Mr. Coleman, the only problem, is that Booker is not retroactive. And that a judge today would obviously have greater discretion to decide whether that recommended life sentence is appropriate or not. I want to get back to, you know, the charge is cocaine. But I don't know that you answered my question as to whether that means that in all of these older cases, none of the defendants are going to be First Step Act eligible because that's the way all those cases were charged. Perhaps I'm mistaken about that. Can you give me examples of where cases were charged as cocaine-based? I'd be happy to submit examples. It would take some research, but we could find those cases. But it's your position that that happened in the 90s and the 80s? Absolutely. And my experience is that because we've dealt with hundreds of these cases, that there have been many pre-apprentice cases in which it's clear from the indictment that it was a crack cocaine case, that that is what was charged. And that, you know, the defense actually cited a case that's helpful on this, which is the Saldana case. It's in their reply brief, and it came from Miami from the 11th Circuit. And the Saldana case is one in which the government conceded the opposite of what I'm compelled to argue here today. The government looked at that indictment and said, this is a crack distribution case. And the reason they made that concession was not only because of what was written in the indictment about what the crime actually was, but then the person was sentenced under B1A3 based on crack and couldn't have been otherwise if you didn't take that quantity as crack. You're saying my questioning of Ms. Phelps regarding the distinction between B1-2 and B1-3 is beside the point because of what Jackson constrains us to look at? Right. But there may be cases, as Judge Porter is suggesting, when you're thoroughly examining the record, where that reference in the record could be important. If you have a case in which the judgment, for example, says B1A3, say the person is sentenced to a mandatory minimum, which couldn't happen otherwise, and it only happened because there was 50 grams of crack in the case. And from what you know about the powder cocaine in the case, you have this 100 to 1 ratio, so you would have needed 5 kilos. You know from the charge, you know from everything about the case, you're not getting to that mandatory minimum. So there were many cases like that. And there are many cases as a result that the government around the country has agreed that people are eligible based on this view that prevailed in Jackson. Unless the court has further questions. I just want to make sure I understand your point about Jackson. Are you conceding that if Jackson had come out the other way, that remand would be required here? No, if Jackson had come out the other way, then he would have been deemed ineligible right away. I mean, the argument that we made in Jackson. Oh, because of the quantity of the crack. Because of the quantity of crack. Even that alone exceeds the current 280 gram threshold. Thank you. Thank you, Mr. Zosmer. We'll hear rebuttal, Ms. Phelps. Thank you, Your Honor. The government has stated that eligibility turns on the charging language in the indictment. They've stated it just now. They stated that in their brief at page 9. That is precisely what Mr. Coleman is asking this court to do. This court can resolve this appeal based on the four corners of the indictment alone. No one disputes that crack cocaine is a substance that has a measurable amount of cocaine. So no one disputes that Mr. Coleman's entire sentence and conviction involved cocaine and crack cocaine. That's clear from the record. Can you cite to us the charging document for that? Your Honor, again, this gets back to the fact that the indictment only refers to 841A1 and 846, as Your Honor pointed out. The actual subsection, whether it's B1A2, B1A3, or both, is nowhere in the record. How do we figure that out? Well, to get to Judge Porter, to get to your point, that's exactly what this court did in U.S. v. Burt. In U.S. v. Burt, the defendant was charged with 841A1 and 846, just like Mr. Coleman. And what this court said in Burt is inferring from the indictment and inferring from the record, this defendant was sentenced under, in that case, it was B1C. Yeah. Which, in our case, inferring from the indictment, inferring from the record, as this court held in Burt, as the government has conceded, we must do. This is an offense that involved powder cocaine and crack cocaine. Mr. Coleman received a mandatory minimum sentence for that offense. Under Terry, the mandatory minimums for crack cocaine offenses were modified by the Fair Sentencing Act. This court should remand to allow the district court to look at the statutory penalties, which were modified by the Fair Sentencing Act, under the facts of the record. Are there, if there are no further questions... Judge Fischer, anything further? No. Thank you very much, Ms. Phelps. Thank you, Mr. Zosmer. We'll take the case under advisory.